**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 24, 2015**

# In the Court of Appeals of Georgia

A14A2088. STAFFORD v. GARELECK et al.

McMillian, Judge.

Grant Stafford appeals the trial court's order dismissing his complaint asserting claims for fraud, conversion, breach of fiduciary duty, and accounting against Steven S. Gareleck and RSC Tennis, LLC (the "LLC"), arising out of the sale of the LLC. We reverse for the reasons set forth below.

"On appeal, we review a trial court's decision to grant or deny a motion to dismiss de novo." *Liberty County School Dist. v. Halliburton*, 328 Ga. App. 422, 423 (762 SE2d 138) (2014). And "[i]n reviewing the grant of a motion to dismiss, an appellate court must construe the pleadings in the light most favorable to the appellant with all doubts resolved in the appellant's favor." (Citation and punctuation omitted.) *Ewing v. City of Atlanta*, 281 Ga. 652, 653 (2) (642 SE2d 100) (2007). We

may also consider any exhibits attached to and incorporated into the complaint and the answer, also construing them in the appellant's favor. *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 89 (2) (764 SE2d 398) (2014); *Islam v. Wells Fargo Bank, N.A.*, 327 Ga. App. 197 (757 SE2d 663) (2014).

And as our Supreme Court has explained, a motion to dismiss should not be granted unless "the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof[.]" (Citation omitted.) *Austin v. Clark*, 294 Ga. 773, 774-775 (755 SE2d 796) (2014). See also *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997). Therefore, the movant must establish that the plaintiff cannot possibly introduce evidence within the allegations of the complaint entitling him to the relief sought. *Austin*, 294 Ga. at 774-775.

Stafford filed his complaint on December 30, 2013, and filed an amended complaint on March 24, 2014. The complaint, as amended, asserted that Stafford and Gareleck were members of the LLC, and Gareleck was a managing member. Beginning in late 2011, Life Time Fitness, Inc. ("Life Time"), a Minnesota-based company, expressed an interest in buying the LLC, and Life Time, in fact, purchased the company in February 2012 for an unknown amount. In the interim, on January 28,

2012, Gareleck presented a document to Stafford that he represented Stafford must sign in order to effectuate both the sale of the LLC to Life Time and the transfer and payment of Stafford's share of the proceeds, which Gareleck said amounted to $170,099.22 (the "Contract"). Stafford signed the document based on Gareleck's representations. Stafford asserts, however, that unbeknownst to him, the document transferred his interest in the LLC to Gareleck, allowing Gareleck to underpay Stafford the true value of his membership interests and to defraud Stafford out of his fair share of the sale proceeds.

Stafford later obtained information that led him to believe that he had been underpaid, defrauded, or otherwise tricked by Gareleck into signing away his interest in the LLC. Stafford notified Gareleck that the amount he received was unacceptable, that he was demanding additional money and documentation evidencing the sale of the LLC to Life Time, and that he was rescinding the Contract. Stafford asserts that in response, Gareleck acknowledged Stafford's rescission of the Contract and agreed to pay Stafford additional money and provide documentation. Despite this representation, Gareleck has failed to pay Stafford additional money or to provide documentation of the sale. Stafford asserts that he is entitled to full payment of his interest in the LLC.

The complaint additionally alleged that Gareleck engaged in misconduct in his role as a managing member of the LLC "by authorizing the LLC to pay Gareleck unfair and usurious rates of interest on loans made from Gareleck to the LLC, paying significant sums from the LLC bank account to contractors for non-LLC related work and expenses, paying for personal trips and travel out of the LLC bank account, and engaging in other self-dealing," which negatively impacted the amount of sales proceeds realized on the sale to Life Time.

Based on these allegations, Stafford asserted claims for fraud based on false representations made by Gareleck relating to the sale of the LLC, fraud in the inducement in connection with Stafford's execution of the Contract, conversion of sales proceeds due and owing to Stafford, and breach of fiduciary duty arising out of Gareleck's duties as a managing member of the LLC. The complaint also sought an accounting, punitive damages, and attorney fees.

The LLC and Gareleck filed a verified answer to Stafford's complaint, in which they denied liability, but admitted, inter alia, that Stafford accepted $170,099.22 after signing the Contract on January 28, 2012. Gareleck and the LLC identified the Contract as the "Mutual Release and Ownership Interest Purchase" (the "Release"), which they attached to their answer. The answer further asserts that Stafford had

4

neither returned nor offered to return the $170,099.22 he received in exchange for signing the Release. The Release itself represented that Stafford held a one-third interest in the LLC and the $170,099.22 was payment for that ownership interest. The Release also stated that Stafford was releasing "any and all claims and liabilities, known and unknown, of every kind and nature whatsoever in law or equity, which [Stafford] had, now has, or may have against" the LLC and Gareleck. The Release further provided that Stafford would not "file any charge or complaint against [the LLC] or [Gareleck] with any government agency or . . . any lawsuit or other legal proceeding with any court asserting any claim that is released in this Release."

The trial court subsequently granted a motion to dismiss filed by Gareleck and the LLC on the grounds that the Release signed by Stafford released all claims against Gareleck and the LLC; that Stafford failed to plead his fraud in the inducement claim with sufficient particularity; and that the merger clause in the Release barred Stafford's claims. On appeal, Stafford argues that the trial court erred (1) in relying upon the release language in the Release since his signature on that document was procured by fraud and he rescinded the Release prior to filing suit; (2) in concluding that he did not properly plead a fraud in the inducement claim; and (3) in concluding that the merger clause bars his claims.

5

1. We turn first to the issue of rescission, which could be determinative in both Stafford's first and third enumeration. "In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." (Citation and punctuation omitted.) *Novare Group, Inc. v. Sarif*, 290 Ga. 186, 188 (1) (718 SE2d 304) (2011). "Where a party elects to rescind the contract, he must do so prior to filing the lawsuit." Id. And Georgia courts have long recognized that a tender to restore, or offer to restore, the consideration received is a condition precedent to filing a lawsuit for fraud in the inducement. Id.; *Williams v. Fouche*, 157 Ga. 227 (121 SE 217) (1924).

Stafford's complaint alleged that he made a prompt rescission of the contract, but it did not address the issue of tender. However, under the notice pleading requirements of Georgia's Civil Practice Act, Stafford was not required to do so. See *Blower v. Jones*, 226 Ga. 847, 849 (3) (178 SE2d 172) (1970) (issue of tender not "a matter raised by a mere general motion to dismiss," but an issue of fact); *Fender v. Fender*, 226 Ga. 129, 130 (4) (173 SE2d 211) (1970) (issue of tender a matter of evidence, not pleadings). Nevertheless, Stafford concedes in his briefing that he did not tender the $170,099.22 back to Gareleck and the LLC, but he asserts he was not

6

required to make a tender because this case falls within an exception to the tender requirement.

Under Georgia law, a party seeking to rescind must either make a tender "*or show a sufficient reason for not doing so; he need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible, or when to do so would be unreasonable.*" (Citation omitted; emphasis supplied.) *Mitchell v. Backus Cadillac-Pontiac, Inc.*, 274 Ga. App. 330, 334 (2) (618 SE2d 87) (2005). Stafford argues that because he was entitled to more than the $170,099.22 he received for his one-third ownership interest in the LLC, he did not have to return what he was entitled to retain. See *Georgia R. Bank & Trust Co. v. Liberty Nat. Bank & Trust Co.*, 180 Ga. 4, 19 (177 SE 803) (1934) ("If the allegations [of the complaint] be true, the plaintiff is entitled to recover many times the amount which it may have received . . . , and equity will not require the useless procedure of returning a part which should be included in the larger sum which it seeks to recover."); *Farnell v. Brady*, 159 Ga. 209 (125 SE 57) (1924) (same). See also *Remediation Svcs., Inc. v. Georgia-Pacific Corp.*, 209 Ga. App. 427, 433 (1) (433 SE2d 631) (1993); *Crews v. Cisco Bros. Ford-Mercury*, 201 Ga. App. 589, 590 (1) (411 SE2d 518) (1991); *Krawagna v. H & S Liquor*, 176 Ga. App. 816, 818 (4) (338

7

SE2d 284) (1985); *Atlanta Life Ins. Co. v. Walker*, 53 Ga. App. 80, 84 (184 SE 776) (1936).

However, we need not reach the issue of whether Stafford was required to make a tender in this case because he alleged in his complaint that he gave prompt notice of his intention to rescind in the spring or summer of 2012; that Gareleck acknowledged the rescission of the parties' contract; and that he agreed to pay Stafford additional monies. Therefore, because it is possible that Stafford could present evidence showing that Gareleck agreed to a rescission of the parties' contract, regardless of any tender, Gareleck and the LLC have failed to carry their burden of showing that Stafford could not possibly introduce evidence within the allegations of the complaint demonstrating that the Release had been rescinded.[1]

---

[1] Although Stafford did not file a claim for rescission in his complaint and only sought to recover damages, the allegations and claims in the complaint express no clear intent to affirm the Release. Stafford makes no claim for breach of contract, but rather asserts claims of fraud and fraud in the inducement in connection with the Release, which could also support a claim of rescission. Under these circumstances, we find that nothing in the complaint contravenes Stafford's intent to rescind. See *Conway v. Romarion*, 252 Ga. App. 528, 532 (1) (557 SE2d 54) (2001). But as this Court noted in *Conway*, "[t]he better practice, of course, would have been to assert a separate claim for rescission in the complaint." Id.

Accordingly, given the possibility that Stafford could present evidence showing that the Release had been rescinded prior to suit, the trial court erred in applying the language of that document, including the merger clause, as grounds for dismissing Stafford's complaint. See *Catrett v. Landmark Dodge, Inc.*, 253 Ga. App. 639, 641 (1) (560 SE2d 101) (2002) (merger clause in rescinded contract does not bar fraud claims). See also *Authentic Architectural Millworks, Inc. v. SCM Group USA, Inc.*, 262 Ga. App. 826, 828 (2) (a) (586 SE2d 726) (2003) (merger clause does not bar claims arising from misrepresentations contained in the contract upon which plaintiff relied).

2. The trial court also found that Stafford failed to plead his fraud in the inducement claim with sufficient particularity. Although OCGA § 9-11-9 (b) requires that claims of fraud be pled with particularity, "a complaint alleging fraud should not be dismissed for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of his claim which would entitle him to relief." (Citation omitted.) *Roberts v. Nessim*, 297 Ga. App. 278, 284-285 (2) (676 SE2d 734) (2009).

"The tort of fraud [including fraudulent inducement] has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or

9

refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citation and punctuation omitted.) *Sims v. Bayside Capital, Inc.*, 327 Ga. App. 47, 51 (2) (755 SE2d 520) (2014). Here, the trial court found that Stafford failed to allege the content of any purported misrepresentation or how it was communicated and further failed to allege facts even remotely suggesting that he justifiably relied upon any purported misrepresentation because he had the opportunity to read and understand the terms of the Release before he signed it.

However, the claim for common law fraud set out in the complaint, as amended, contains allegations detailing a number of misrepresentations and fraudulent omissions by Gareleck and the LLC with regard to the sale of the LLC to Life Time. The claim for fraudulent inducement incorporates these allegations and alleges that Gareleck and the LLC made these misrepresentations or omissions with the intent of inducing him to sign over his interest in the LLC for less than its fair value. Stafford also alleges that he relied on these misrepresentations to his detriment. Additionally, the complaint alleged that as a managing member of the LLC, Gareleck owed a fiduciary duty to Stafford in connection with LLC business.

Although Stafford alleges that Gareleck made a number of misrepresentations, the gist of his claim for fraud in the inducement was that he signed the Release based

10

on alleged misrepresentations that the $170,099.22 he received represented the full and fair value of his one-third ownership interest. Given the allegations that Gareleck owed him a fiduciary duty, we cannot say beyond a doubt that Stafford could present no evidence showing that he justifiably relied on any representations by Gareleck. See *Northwest Plaza, LLC (MI) v. Northeast Enterprises, Inc.*, 305 Ga. App. 182, 191(3) (a) (699 SE2d 410) (2010) ("Issues of justifiable reliance and proper due diligence are generally for the jury."); *Savu v. SunTrust Bank*, 293 Ga. App. 683, 690-691 (3) (668 SE2d 276) (2008) ("Because a confidential relationship may be found whenever one party is justified in reposing confidence in another, the issue of whether a confidential relationship has been created is ordinarily reserved for the jury.") (citation omitted). Moreover, the Release itself places the same value on Stafford's interest and contains no language indicating that this amount was intended as a settlement, compromise, or discount as to that value. Thus, at this stage of the litigation, we cannot say beyond a doubt that merely reading the Release should have placed Stafford on notice of any alleged misrepresentation as to the value of his interest.

We find that the allegations in the complaint, as amended, are sufficient to state a claim of fraud in the inducement, and the trial court erred in dismissing Stafford's

11

complaint on the ground that it failed to allege such a claim with the requisite particularity.

*Judgment reversed. Phipps, C. J., and Ellington, P. J., concur.*

.